**Leo R. GROSSMAN, Appellant,**

v.

**The SCHOOL BOARD OF I.S.D. # 640 Individually and in their representative capacity, Melvin R. Salmela individually, and in his capacity as Superintendent of Schools for I.S.D. # 640, and Jerry Turner, Respondents.**

**No. CX-86-116.**

Court of Appeals of Minnesota.

June 24, 1986.

David C. Moody, Willmar, for appellant.

James E. Knutson, St. Paul, Robert C. Runchey, Robert L. Gjorvad, Marshall, for respondents.

Heard, considered and decided by FORS-BERG, P.J., and SEDGWICK and RANDALL, JJ.

## OPINION

SEDGWICK, Judge.

Appellant sued respondents the school district, the superintendent and the principal for defamation, violation of the open meeting law and violation of civil rights laws. Respondents' motion for summary judgment was granted by the court, except that the claimed violation of the Open Meeting Law was dismissed without prejudice. Grossman appeals. We affirm.

## FACTS

Appellant, a tenured teacher for Independent School District No. 640, began a five year leave of absence effective May 27, 1981. He agreed to continue to work as athletic director during the transition period to a new director.

This litigation arises from allegations that appellant presented a false record of hours worked during the summer of 1981, and that he was also improperly reimbursed by the school district for liquor charges.

During the 1981–82 school year the secondary school principal Jerry Turner (respondent) learned that appellant may have been improperly reimbursed for liquor charges as part of his out-of-town travel expenses, and that he may have been reimbursed for summer hours during which he did not work. Turner gave the school board this information during the 1981–82 school year. At that time, the school board was concerned about problems with the superintendent of schools, Melvin Salmela (respondent).

Early in 1982, three members of the school board met at the home of one board member to discuss the superintendent's job performance. At the same time, three other board members met at a bank to discuss the superintendent. The seventh board member was not at either location. One of the board members at the home meeting telephoned one of the board members at the bank meeting. However, the members were at no time together at the same location. Appellant calls these two gatherings the "secret meeting" of the board.

On April 27, 1982, the school board met to discuss its concerns regarding the superintendent. The board also presented a letter to the superintendent which stated that all seven members of the board had lost confidence in the superintendent's ability to be an effective administrator. In that letter, under the heading, "Personnel Management" was the paragraph:

Leo Grossman was allowed to present a falsified work record for the summer of 1981, and was paid for hours he did not work. He was also reimbursed for non-reimburseable expenses (bar bills).

On May 4, 1982, another school board meeting was held, which about 90 people attended. The superintendent read the full contents of the April 27 letter and responded to the allegations regarding appellant.

In July 1982, the board gave appellant a written notice of deficiency under Minn. Stat. § 125.12, subd 6 (1982). Appellant filed a grievance challenging the allegations contained in the notice of deficiency. The arbitrator issued an award, which directed the school district to remove the notice of deficiency dated July 12, 1982 from appellant's personnel file as it related to two of the allegations. The arbitrator expunged the allegations that appellant failed to account for the activities performed in transition to the new athletic director between June 5 and September 6, 1981, and that appellant failed to account for all funds received from students in a sale to them of athletic supplies. The other allegations remained in appellant's file.

Appellant sued the school board, the superintendent, and the principal, for defamation, violation of civil rights, and violation of the Open Meeting Law.

## ISSUES

1. Did the trial court err in granting respondents summary judgment on the defamation claim?

2. Did the trial court err in dismissing appellant's claim regarding violation of the Open Meeting Law due to insufficiency of the pleading?

3. Did the trial court err in granting respondents summary judgment on the civil rights claims?

**ANALYSIS**

1. Appellant alleges that respondents committed defamatory acts at the April 27 and May 4, 1982 school board meetings where the letter containing allegations of improper conduct by appellant was discussed.

Appellant and respondent debate the application of a decision of this court to their situation, i.e., *Freier v. Independent School District No. 197*, 356 N.W.2d 724 (Minn.Ct.App.1984). In that case, a school teacher was fired, subsequently reinstated, and then he sued for defamation.

This court found the publication of the school board's decision to discharge Freier was protected by an absolute privilege grounded in three different contexts. *Freier*, 356 N.W.2d at 728–31. Those grounds were (1) an absolute judicial privilege because the school board was acting as a quasi-judicial body when it publicized its discharge decision; (2) the absolute privilege to follow the requirements of the law; (3) the absolute official privilege to carry out discretionary functions of public bodies, under Minn.Stat. § 466.03, subd. 6 (1982). *Id.*

The question is whether any of the grounds for absolute privilege enunciated in *Freier* apply here. The judicial privilege does not apply, since the school board was not acting in a quasi-judicial function in its investigation of the allegations against appellant.

The second inquiry is whether there was absolute privilege because publication of the allegations was required by law. *See* Restatement (Second) of Torts § 592A (1977). As in *Freier*, publication of the two board proceedings was mandated by Minn. Stat. § 123.33, subd. 11 (1982):

The board shall cause its official proceedings to be published once in the official newspaper of the district. Such publication shall be made within 30 days of the meetings at which such proceedings occurred.

*Id.*

Moreover, Minn. Stat. § 13.43, subd. 2 (1982), provides that certain personnel data on current and former employees of a state agency is public, such as:

the status of any complaints or charges against the employee, whether or not the complaint or charge resulted in a disciplinary action; and the final disposition of any disciplinary action * * *.

*Id. See Johnson v. Dirkswager*, 315 N.W.2d 215 (Minn.1982) (letter of termination held to be public information). As indicated in *Freier*:

In the case at hand, the public has an absolute right of access to knowledge about alleged misconduct by a teacher.

356 N.W.2d at 730.

The third ground for the absolute privilege discussed in *Freier* is immunity for discretionary acts. School board members, like many government officials, are entitled to an absolute official privilege in the exercise of discretionary school district functions. Minn.Stat. § 466.03, subd. 6 (1982); *see Freier*, 356 N.W.2d at 731. In *Freier*, the decision to discharge was held to be a discretionary act. *Id.*

A discretionary act of a public body is an act which requires a balancing of competing and complex factors at the planning rather than at the operational stage of development. *Ostendorf v. Kenyon*, 347 N.W.2d 834, 837 (Minn.Ct.App. 1984) (citing *Larson v. Independent School District No. 314*, 289 N.W.2d 112 (Minn.1979); *Williamson v. Cain*, 310 Minn. 59, 245 N.W.2d 242 (1976)). Official duty is ministerial when it is merely the execution of a specific duty arising from fixed and designated facts, that is, when it is absolute, certain and imperative. *Larson*, 289 N.W.2d at 119 (citations omitted).

The decision to discipline a teacher is a discretionary school board act, not unlike the decision to discharge.

In summary, the trial court did not err in granting respondent summary judgment on the defamation claim, since (1) publication of the school board proceedings at which the allegations were discussed was mandated by statute, and (2) the allegations were part of a disciplinary proceeding that was a discretionary act under Minn.Stat. § 466.03, subd. 6.

2. Appellant argues that the trial court erred in dismissing without prejudice his claim for violation of the Open Meeting Law, Minn.Stat. § 471.705 (1982). In count one, appellant claimed that each of the school board members violated § 471.705 by conducting private meetings without notice regarding the public business of Independent School District No. 640. Appellant asked that each of the school board members be liable to appellant in the amount of $100 for each occurrence.

Section 471.705, subd. 2, provides that if a member intentionally violates the open meeting requirement, that member shall be subject to a civil penalty not to exceed $100. *Id.*

The trial court dismissed this claim without prejudice, stating that to be actionable, the complaint must request the civil penalty. The complaint here requested payment of the $100 instead of using the words "civil penalty."

Notice pleading only requires a short and plain statement of the claim showing that the plaintiff is entitled to relief, and a demand for judgment for the relief to which he deems himself entitled. Minn.R. Civ.P. 8.01. "Pleadings are to be liberally construed, even when a plaintiff has misconceived the nature of the claim." *Hutton v. Bosiger,* 366 N.W.2d 358, 360 (Minn. Ct.App.1985), *pet. for rev. denied,* (Minn. June 27, 1985) (citation omitted).

Although the trial court may have been overly technical, the claim was dismissed without prejudice, there was no substantial

detriment to appellant, and no abuse of discretion.

3. Appellant also argues that by charging appellant with falsification and illegal reimbursement, without first allowing a private hearing, the school board violated his due process rights. Therefore, appellant argues he is entitled to relief under 42 U.S.C. § 1983 (1982).

Section 1983 provides that every person who under color of state law causes another person to be deprived of any rights, privileges or immunities under the Constitution, shall be liable to the party injured. *Id.*

In *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), the United States Supreme Court indicated that denial of procedural due process is actionable under § 1983. However a plaintiff must allege a liberty or property interest. *Bird v. State, Department of Public Safety,* 375 N.W.2d 36, 42 (Minn.Ct.App.1985) (citations omitted).

Therefore, the first question under section 1983 analysis is whether a constitutional right was infringed. Appellant did have a hearing before an arbitrator under Minn. Stat. § 125.12, subd. 14 (1982). That section provides:

All evaluations and files generated within a school district relating to each individual teacher shall be available to each individual teacher upon written request.

\* \* \* \* \* \*

A school district may destroy the files as provided by law and shall expunge from the teacher's file any material found to be false or substantially inaccurate through the grievance procedure required pursuant to section 179.70 \* \* \*. *Id.*

Appellant petitioned to expunge his notice of deficiency, and some of the allegations were expunged. Those which the arbitrator could not find to be false or substantially inaccurate remain in his record.

However, appellant argues that he had a constitutional right to a hearing *before* any charges were compiled into the notice of

deficiency. He cites *Setty v. Minnesota State College Board,* 305 Minn. 495, 235 N.W.2d 594 (1975), for this proposition. This is not a nonrenewal case, and the *Setty* grounds do not apply to appellant. However, there the court found the charge that the teacher had difficulty in relating to students did not damage his reputation to the extent that a pretermination hearing would be required. Likewise, the charges that appellant needed to be a better bookkeeper were not so damaging that a pre-allegation hearing is required.

## DECISION

We affirm the decision of the trial court.