Joseph A. MERZ, et al., Appellants,

v.

Andy LEITCH, et al., Respondents.

No. CX–82–1175.

Supreme Court of Minnesota.

Jan. 13, 1984.

Williams, Nitz, Krekelberg, Stringer & Oldenkamp, Charles C. Krekelberg, Pelican Rapids, for appellants.

Rufer, Hefte, Pemberton, Schulze, Sorlie, Sefkow & Kershner, Richard C. Hefte, Fergus Falls, for respondents.

KELLEY, Justice.

Appellants, residents and taxpayers of Otter Tail County, appeal from a district court order dismissing their claims that three members of the Otter Tail County Board of Commissioners violated the Minnesota Open Meeting Law, Minn.Stat. § 471.705 (1982), by conducting county business at a meeting of the board prior to the time announced for the commencement of the meeting. We hold that there was a technical violation of the Open Meeting Law by the respondents. We further hold,

prospectively, that conducting public business at a meeting prior to the time publicly announced for the commencement of the meeting will result in imposition of the civil penalties of the statute. However, because respondents did not have the benefit of our recent decision in *St. Cloud Newspapers v. District 742 Community Schools*, 332 N.W.2d 1 (Minn.1983), the violation was not intentional, and no member of the public or press was harmed by the action here taken, we affirm.

The Otter Tail Board of County Commissioners met on January 8, 1980, as required by Minn.Stat. § 375.07 (1980), to schedule its 1980 meetings. The board established four meeting days each month. In that year the board designated December 22 as a date on which it would hold a welfare meeting in the morning and a regular business meeting in the afternoon. *The Fergus Falls Daily Journal*, the county's legal newspaper, published the 1980 meeting dates, but it published no starting times for the meetings because the board had specified no times for commencement. The board never formally announced starting times, but the county auditor, who took the official minutes of the meetings of the board, recorded all 1980 afternoon business meetings as starting at 1 p.m. as a matter of formality, even though as a practical matter the meetings sometimes started earlier. The county auditor also customarily noted in the minutes that business meetings immediately preceding the afternoon business meetings were adjourned to 1 p.m. The county auditor never placed business on the agenda before 1 p.m., although on occasion business not listed on the agenda had been discussed by the county board before 1 p.m.

The board met on December 22, 1980 for its scheduled meeting. In the morning the board, as scheduled, conducted welfare business. The minutes of the business meeting held December 10, 1980 indicate that the chairman had adjourned all discussion of regular county business until 1 p.m. on December 22, 1980. In fact, when the board returned from lunch at approximately 12:30 p.m. on that day, it began going over the county's bills.

At approximately 12:50 p.m. Commissioner Leitch moved, and his motion was seconded, to terminate the employment of Malcolm K. Lee, the county's manager of the Land and Resource Management Office. This was not an agenda item nor had Commissioner Leitch discussed his intention to move for the termination with other commissioners prior to the meeting. Commissioner Leitch, however, had informed Lee earlier in the month that unless Lee resigned immediately Commissioner Leitch would move that he be terminated at the December 22, 1980 board meeting for alleged improprieties. No other notice was given to Lee that his job might be terminated. No member of the board objected to the bringing of the motion prior to 1 p.m. In fact, the board voted 3 to 2 to terminate the employment of the manager of the Land and Resource Management Office. The respondents in this case are the three commissioners who voted in favor of the termination.

A reporter from *The Fergus Falls Daily Journal* arrived shortly before 1 p.m. but after the termination motion had been passed. A motion brought later on in the meeting to advertise for applicants to fill Lee's position alerted her that business had transpired before she arrived. The reporter asked about the original motion, and the board told her that they had terminated Lee's employment. She gathered all the information in connection with the vote and the termination and, in fact, it was published in the next day's newspaper. Neither she nor the newspaper objected to the conduct of the county board transacting this business prior to 1 p.m.

Appellants are residents of Otter Tail County. Although they have appeared before the board on several occasions to protest actions proposed by the board, they neither attended nor planned to attend the December 22 meeting. Malcolm K. Lee knew that Commissioner Leitch would make the motion to terminate his employment. Knowing this, he chose neither to

appear at the meeting nor have anyone appear on his behalf. In fact, neither he nor anyone appearing on his behalf appeared at the meeting that afternoon. At the next meeting of the board, on January 6, 1981, the board rescinded its December 22 action and Lee remains in his position as manager of the Land and Resource Management Office to the present time.

Appellants contend a member of a public board may be penalized for failing to give adequate notice of meeting time under the Minnesota Open Meeting Law; that the Otter Tail County Board failed to give adequate notice of its December 22 afternoon business meeting; and that since all the minutes of the county board showed afternoon sessions to commence at 1 p.m., the board members should be penalized for conducting county business prior thereto, even though no one was harmed by the conduct of the board members.

Minn.Stat. § 375.07 (1980) fixed days in January and July on which the Otter Tail County Board was required to meet. That statute further required the board to "hold such extra sessions as it deems necessary for the interests of the county." However, this statute did not require that notice of the time and date of extra sessions, such as the December 22 session, be given to the public.

The Open Meeting Law requires that county board meetings "shall be open to the public," Minn.Stat. § 471.705, subd. 1 (1982), and imposes civil penalties on any person who violates its provisions. Minn. Stat. § 471.705, subd. 2 (1982).[1] The Open Meeting Law contains no express requirement that notice of all meetings be given to the public.

This court remedied the lack of a notice provision in *Sullivan v. Credit River Township*, 299 Minn. 170, 174, 217 N.W.2d 502, 506 (1974), by construing the open

meeting statute to require "adequate notice of the time and place of the meeting." There we said that in our judgment, "a meeting of which the public is unaware is not [a public] meeting. * * * The language of the statute directing that meetings be open to the public is meaningless if the public has no knowledge that the meeting is to take place." *Sullivan*, 299 Minn. at 174, 217 N.W.2d at 505. Nevertheless, the trial judge in the present case concluded that *Sullivan* does not authorize the court to add a notice requirement by implication when, as here, enforcement of a penalty is sought. He opined that a purely statutory offense cannot be established by implication. Relying on *State v. Moseng*, 254 Minn. 263, 268, 95 N.W.2d 6, 11 (1959), he stated:

> Since there is no express statutory requirement for furnishing notice of the time of a meeting, no such requirement can exist except by implication. For some purposes, and for some uses of the Open Meeting Law, a requirement of notice of the time of a meeting may be implied. But that cannot be done when enforcement of a penalty is sought [as is here sought]. (footnote omitted)

He therefore concluded that:

> Since the county board was not required by any statute * * * to give notice of the day or time of such sessions as it deemed necessary, it did not violate any statute by starting at such time as it deemed necessary.

The trial court, however, when it made its orders dismissing the plaintiffs' claims did not have the benefit of our recent case, *St. Cloud Newspapers v. District 742 Community Schools*, 332 N.W.2d 1 (Minn. 1983). In *St. Cloud Newspapers*, the appellants were seeking civil penalties from a school board for holding a meeting without

---

**1.** Minn.Stat. § 471.705, subd. 2 (1982), provides in part:

> Any person who violates subdivision 1 shall be subject to personal liability in the form of a civil penalty in an amount not to exceed $100 for a single occurrence. * * * Upon a third violation by the same person connected

with the same governing body, such person shall forfeit any further right to serve on such governing body or in any other capacity with such public body for a period of time equal to the term of office such person was then serving.

prior notice. At issue there was whether or not civil penalties assessed against school board members were permissible for holding a meeting not open to the public because the public had not been given advance notice. We held that the statute was violated and that the school board members were liable for civil penalties. Before so holding, we discussed at length the public policy behind the statute. We pointed out that the court previously had stated that the purposes of the statute are "(1) 'to prohibit actions being taken at a secret meeting where it is impossible for the interested public to become fully informed concerning board decisions or to detect improper influences,' *Lindahl v. Independent School District No. 306*, 270 Minn. 164, 167, 133 N.W.2d 23, 26 (1965); (2) 'to assure the public's right to be informed,' *Channel 10, Inc. v. Independent School District No. 709*, 298 Minn. 306, 313, 215 N.W.2d 814, 821 (1974); and (3) 'to afford the public an opportunity to present its views to the board,' *Sullivan v. Credit River Township*, 299 Minn. 170, 175, 217 N.W.2d 502, 506 (1974)." *St. Cloud Newspapers*, 332 N.W.2d at 4. We also pointed out that the Minnesota Open Meeting Law was enacted for public benefit and is to be construed most favorably to the public. *St. Cloud Newspapers*, 332 N.W.2d at 4.

■ Other jurisdictions which have considered similar statutes have reached the same conclusion. *See Laman v. McCord*, 245 Ark. 401, 432 S.W.2d 753 (1968); *Board of Public Instruction of Broward County v. Doran*, 224 So.2d 693 (Fla.1969); *State ex rel. Murray v. Palmgren*, 231 Kan. 524, 646 P.2d 1091 (1982), *appeal dismissed*, — U.S. —, 103 S.Ct. 562, 74 L.Ed.2d 927 (1982). Undoubtedly, had the trial court been aware of the ruling in *St. Cloud Newspapers* it would not have arrived at the conclusion it did with respect to this issue. Accordingly, we hold that the Minnesota Open Meeting Law, Minn. Stat. § 471.705 (1982), is to be broadly construed in favor of the public and that conducting a meeting where the time and place of the meeting have not been given prior thereto or in conducting a meeting prior to the time when the public was lead to believe the meeting was to commence is a violation of the Open Meeting Law.

■ The trial judge never determined the scheduled time of the meeting. He did find, however, that "[e]ach month the board approved the minutes of its proceedings for the previous month * * *." On each occasion "the minutes disclosed and the public could read that the afternoon county business meeting commenced at 1:00 o'clock p.m." Moreover, he indicated that if a member of the public had made inquiry of the county auditor or of the county board members, the 1 p.m. meeting time would have been confirmed, although the inquirer may also have been told that sometimes a matter was considered by the board before 1 p.m. or between 12:30 p.m. and 1 p.m. Thus, we hold that the starting time of the meeting on the afternoon of December 22, 1980 was 1 p.m. because it had been noted and published consistently in the official minutes of prior meetings of the county board.

The trial judge here noted that even if the starting time were 1 p.m., it is clear that the meeting held by the Otter Tail County Board was not a secret meeting since it was held at the usual place of meetings of the county board, the doors to the meeting were open and anyone could come into the meeting. Moreover, no one was aggrieved. Lee did not plan to attend the meeting that afternoon nor did he plan to have anyone appear there on his behalf. Neither of the plaintiffs attended the county board's meeting that afternoon nor would they have attended the meeting in any event. There is no evidence that had the motion been made at 1 p.m. or later it would not have passed on that day. However, we suggested in *Moberg v. Independent School District No. 281*, 336 N.W.2d 510, 516 (Minn.1983), that notice and openness of a meeting are more important than whether action is actually taken or contemplated at the meeting or whether anyone is affected by the action so taken. Accordingly, we conclude that neither subsequent

rescission of Lee's termination nor appellants' failure to attend the scheduled meeting cured the Open Meeting Law violation.

Nevertheless, we affirm the trial court's dismissal of this action. The county commissioners were not aware of our interpretation of the Open Meeting Law in *Moberg* or *St. Cloud Newspapers* because those decisions were rendered long after the meeting of the board here in dispute. Those cases, as indicated, clearly hold that board members might be subject to a penalty akin to a fine by proceeding to transact county business a few minutes before the scheduled time of the meeting. As we indicated in *Moberg*, whether anyone is adversely affected by action taken at the meeting is essentially irrelevant in determining whether the statute has been violated. However, we do note that in this case the action taken by respondents was before *Moberg* and that the public was not harmed. A representative of the press was present at the meeting shortly before 1 p.m. and very shortly thereafter had an opportunity to examine the minutes and report the action taken by the county board and, in fact, did report it in the next day's newspaper. Even Lee, although he knew that a motion would be made to terminate his employment at the meeting on the afternoon of December 22, 1980, neither intended to appear nor to have anybody appear on his behalf. He did not personally appear at any time during the course of that meeting nor did anyone appear there on his behalf. These appellants had no intention of attending the meeting. Finally, the action taken at the meeting was rescinded at the very next meeting of the county board and Lee's termination of employment was cancelled. As the trial court properly observed, no one was aggrieved. Because of the factors just listed, we conclude that the facts and circumstances surrounding the December 22, 1980 meeting of the Otter Tail County Board do not justify any penalty in this case and therefore we affirm. Since the issuance of *St. Cloud Newspapers* and *Moberg* and this decision, boards and commissions of public bodies are put on notice that good faith or lack of harm is not a defense to an action by a member of the public for violation of Minnesota's open meeting law.

Affirmed.

SIMONETT, Justice (concurring specially).

Subdivision 2 of Minn.Stat. § 471.705 (1982) provides that on a third violation of the Open Meeting Law the violator forfeits both the right to continued tenure in office and the right to run again for that office for a period of time equal to the term of office such person was then serving. In other words, three violations, even if harmless and committed in good faith, if unrelated, result in a mandatory forfeiture of office. It was concern for this harsh result that, in large part, influenced the trial court to construe the statute strictly with respect to a notice requirement.

I agree with this court's opinion but wish to add that I believe the forfeiture of office provision in the statute, particularly as this court has now construed the law, may be constitutionally infirm. *See Pavlak v. Growe*, 284 N.W.2d 174 (1979); Minn. Const. art. 7, § 6.